UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

THOMAS EMMANUEL WILLIAMS,

Defendant.

Crim. Action No. 23-0380-TDC

## MEMORANDUM OPINION

On January 16, 2025, Defendant Thomas Emmanuel Williams was convicted after a jury trial on 16 counts consisting of: one count of firearms trafficking, in violation of 18 U.S.C. § 933(a)(1) (Count 1); four counts of possession of a firearm or ammunition after a felony conviction, in violation of 18 U.S.C. 922(g)(1) (Counts 2, 3, 7, and 10); two counts of unlawful possession of a machinegun, in violation of 18 U.S.C. § 922(o) (Counts 4 and 9); two counts of distribution of or possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Counts 5 and 11); one count of carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 6); one count of selling a firearm in furtherance of a felony, 18 U.S.C. § 922(d)(10) (Count 8); and one count of carrying a machinegun during and in relation to, or possessing a machinegun in furtherance of, a drug trafficking crime, 18 U.S.C. §§ 924(c)(1)(A), (B)(ii) (Count 12). The evidence at trial established that Williams sold firearms to a confidential informant ("CI") working with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in controlled purchases on four occasions in early 2023. Specifically, as relevant to Counts 1 and 2, on January 18, 2023, Williams sold three firearms to the CI; as relevant to Counts 1, 3, and 4, on January 20, 2023, Williams sold three firearms, as well as a Glock-type

conversion device used to convert a pistol into a machinegun, to the CI; as relevant to Counts 1, 5, 6, 7, and 8, on January 27, 2023, Williams sold three firearms, as well as oxycodone and codeine pills, to the CI; and as relevant to Counts 1, 9, 10, 11, and 12, on February 3, 2023, Williams sold a firearm, two Glock-type conversion devices, and fentanyl pills to the CI.

At the close of the evidence, Williams made an oral Motion for Judgment of Acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29(a). The Court denied the Motion on the record as to Counts 2, 3, 5, 7, 10, and 11 and reserved ruling as to Counts 1, 4, 6, 8, 9, and 12. Following the jury's verdict, Williams filed a renewed Motion for Judgment of Acquittal pursuant to Rule 29(c) on those remaining counts. The Motion is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Williams seeks judgment of acquittal pursuant to Rule 29 on Counts 1, 4, 6, 8, 9, and 12 of the Indictment. On a Rule 29 motion, the Court determines whether, viewing the evidence in the light most favorable to the prosecution, there was substantial evidence to support the jury's verdict. *United States v. Osborne*, 514 F.3d 377, 385 (4th Cir. 2008). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* To sustain the verdict, the Court must conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the Court must consider both direct and circumstantial evidence. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). The Court does not weigh the credibility of witnesses but instead must assume that the jury

has resolved all contradictions in the Government's favor, *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993), and give the Government "the benefit of all reasonable inferences from the facts proven to those sought to be established," *Tresvant*, 677 F.2d at 1021.

**I.      Counts 1 and 8**

As to Counts 1 and 8, Williams asserts substantially the same argument:   that the Government did not and could not prove all of the elements of these offenses because all of the firearms at issue were sold to a government agent and thus were never going to result in the commission of a felony.

The statute underlying the crime charged in Count 1, firearms trafficking, states that:

> It shall be unlawful for any person to . . . ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony.

18 U.S.C. § 933(a)(1). Thus, in order to establish the crime of firearms trafficking, the Government must prove beyond a reasonable doubt that: (1) the defendant shipped, transported, transferred, caused to be transported, or otherwise disposed of any firearm to another person; (2) the firearm was in or otherwise affecting interstate or foreign commerce; and (3) the defendant knew or had reasonable cause to believe that the recipient's use, carrying, or possession of the firearm would constitute a felony. *See id.* The statute underlying the crime charged in Count 8, selling a firearm in furtherance of a felony, states that "[it] shall be unlawful for any person to sell or otherwise dispose of a firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . intends to sell or otherwise dispose of the firearm or ammunition in furtherance of a felony." 18 U.S.C. § 18 U.S.C. § 922(d)(10). Thus, in order to establish this crime, the

3

Government must prove beyond a reasonable doubt that: (1) the defendant sold or otherwise disposed of any firearm or ammunition to any person; and (2) the defendant knew or had reasonable cause to believe that selling or disposing of the firearm was in furtherance of a felony. *See id.*

Williams argues that the Government cannot establish the third element of the crime of firearms trafficking and the second element of the crime of selling a firearm in furtherance of a felony because it would have been impossible for a felony to result from Williams's firearms trafficking, or for a felony to be furthered by his sale of any firearm, where each firearm allegedly trafficked or sold by Williams was purchased by a government agent, specifically a CI working with the ATF as part of a series of controlled purchases.

This argument fails. First, neither 18 U.S.C. § 933(a)(1) nor 18 U.S.C. § 922(d)(10) requires that a felony actually result from the defendant's firearm trafficking or be furthered by the defendant's sale of a firearm. Rather, the statutes provide that it is sufficient for a defendant to have "reasonable cause to believe" that a felony would result or be furthered by such transactions. 18 U.S.C. § 933(a)(1); 18 U.S.C. § 922(d)(10). Second, although these statutes were only recently enacted, in related contexts, courts have upheld convictions when the defendant was reasonably led to believe that a firearm would be used to advance a felony when in fact the recipient was a government agent. In relation to 18 U.S.C. § 924(h), which at the time prohibited an individual from "knowingly transfer[ring] a firearm, knowing that such firearm will be used to commit a crime of violence . . . or drug trafficking crime," 18 U.S.C. § 924(h) (1994), the United States Court of Appeals for the Fourth Circuit rejected a similar impossibility argument that because the firearms sold by the defendant to an undercover ATF agent "never would *actually* be used in a

drug crime, he could not have *known* that they would be used in a drug crime." *United States v. Moore*, 92 F.3d 1183 (Table), 1996 WL 452423, at *3 (4th Cir. Aug. 12, 1996).

Likewise, courts have regularly held that a crime requiring only a "reasonable cause to believe" that a certain fact is true or that a certain event will occur can still be proven even where the relevant fact is not actually true or the relevant event ultimately does not occur. For example, in *United States v. Colicchio*, 470 F.2d 977 (4th Cir. 1972), the court upheld a conviction under 18 U.S.C. § 922(a)(5), which prohibits the unlicensed transfer of a firearm to a person who the defendant "knows or has reasonable cause to believe does not reside in" the same state as the defendant, because the defendant had "reasonable cause to believe" that the undercover agent to whom the firearm was sold resided out of state, even though the agent actually resided in the same state as the defendant. *Id.* at 978–79. Similarly, in *United States v. Johal*, 428 F.3d 823, 828–29 (9th Cir. 2005), the court upheld a conviction under 21 U.S.C. § 841(c)(2) for "knowingly or intentionally" possessing or distributing "a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance" where the defendant sold a chemical ingredient to an undercover agent who said that he was going to make crystal methamphetamine, reasoning that the statute is violated "based on [the defendant's] understanding that he or she is contributing to the production of illicit drugs, even if the drugs ultimately are not made." *Id.* at 828–29 (collecting cases).

Thus, where 18 U.S.C. § 933(a)(1) and 18 U.S.C. § 922(d)(10) require only that Williams had "reasonable cause to believe" that a felony would result from or be furthered by the sale of a firearm, the Court rejects Williams's impossibility argument and finds that the state of mind requirement can be satisfied by a sale to a government agent who leads the defendant reasonably to believe that the firearm sales will result in or further a felony offense. Where Williams does not

dispute that there was sufficient evidence to show that the CI led Williams reasonably to believe

that he was a felon legally barred from possessing and reselling the firearms at issue in Count 1,

and that he would transfer the firearms at issue in Count 8 in furtherance of a felony, the Motion

will be denied as to Counts 1 and 8.

## II.    Counts 4 and 9

As to Counts 4 and 9, Williams was convicted of the crime of unlawful possession of a

machinegun, in violation of 18 U.S.C. § 922(o)(1), which provides that "it shall be unlawful for

any person to transfer or possess a machinegun." In the Motion, Williams argues that he should

be acquitted on Counts 4 and 9 because the Glock-type conversion devices referenced in those

counts as the possessed "machinegun[s]" do not fall within the applicable definition of that term.

In order to establish the crime of unlawful possession of a machinegun, the Government

must prove beyond a reasonable doubt that: (1) the defendant possessed a machinegun; (2) the

defendant acted knowingly; and (3) the defendant was not authorized to possess the machinegun.

*See* 18 U.S.C. § 922(o); *United States v. Aiken*, 974 F.2d 446, 449 (4th Cir. 1992); *United States

v. Torres-Pérez*, 22 F.4th 28, 32 (1st Cir. 2021). For purposes of this provision, the term

"machinegun" is defined in 18 U.S.C. § 921(a)(24), which states that this term "has the meaning

given such term in section 5845(b) of the National Firearms Act." 18 U.S.C. § 921(a)(24). Under

that definition:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or
> can be readily restored to shoot, automatically more than one shot, without manual
> reloading, by a single function of the trigger. The term shall also include the frame
> or receiver of any such weapon, any part designed and intended solely and
> exclusively, or combination of parts designed and intended, for use in converting a
> weapon into a machinegun, and any combination of parts from which a machinegun
> can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). Where the definition of a machinegun specifically includes "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun," *id.*, it can include devices such as the Glock-type conversion devices described in Counts 4 and 9 of the Indictment. *See United States v. Williams*, 364 F.3d 556, 558 (4th Cir. 2004) (noting that "conversion parts" comprise a "separate and individually sufficient" category "within the definition of a machinegun"). At trial, the Government introduced evidence, through the testimony of ATF Firearms Enforcement Officer John Hawes and an accompanying video showing how a Glock-type conversion device could be used to convert a Glock pistol into a machinegun, from which the jury could reasonably conclude that the devices sold by Williams were parts "designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun." 26 U.S.C. § 5845(b).

Williams's reliance on *Garland v. Cargill*, 144 S. Ct. 1613 (2024), in which the United States Supreme Court addressed "whether a bump stock transforms a semiautomatic rifle into a 'machinegun,' as defined by § 5845(b)," is misplaced. *Id.* at 1618. A "bump stock" refers to a firearm accessory that facilitates the technique of "bump firing," which enables the firing rate for a semiautomatic weapon to approach that of a machinegun. *Id.* at 1617–18. The Court ultimately concluded that a bump stock is not a machinegun under 26 U.S.C. § 5845(b) on the grounds that a "semiautomatic rifle equipped with a bump stock does not fire more than one shot 'by a single function of the trigger,'" and further that, "[e]ven if a semiautomatic rifle with a bump stock could fire more than one shot 'by a single function of the trigger,' it would not do so 'automatically.'" *Id.* at 1620, 1624 (quoting 26 U.S.C. § 5845(b)). Here, by contrast, Williams does not contest that the Glock-type conversion devices at issue here are designed to allow certain pistols to fire multiple rounds automatically. Thus, *Cargill* does not provide a basis to alter the Court's conclusion that

the Government presented sufficient evidence to sustain the convictions on Counts 4 and 9. The Court will deny the Motion as to those counts.

### III.    Count 6

On Count 6, Williams was convicted of carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). In order to establish this crime, the Government must prove beyond a reasonable doubt that: (1) the defendant committed a drug trafficking crime for which he might be prosecuted in a court of the United States, specifically, the crime charged in Count 5 of the Indictment; and (2) the defendant knowingly carried a firearm during and in relation to the commission of that crime, or possessed a firearm in furtherance of that crime. *See id.*; *United States v. Cook*, 76 F.3d 596, 603 (4th Cir. 1996). Williams argues that the Government failed to prove the second element that the firearms were carried "during and in relation to," or possessed "in furtherance of," a drug trafficking crime because the evidence at trial showed only that, during the relevant transaction on January 27, 2023, the sole role played by the firearms was that they were sold alongside the drugs, not that they were actively carried or used by Williams in the course of the transaction.

"To meet the 'in relation to' requirement, the Government must prove that the firearm has 'some purpose or effect with respect to the drug trafficking crime'" in that the gun "at least must 'facilitate or have the potential of facilitating,' the drug trafficking offense." *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (quoting *Smith v. United States*, 508 U.S. 223, 237 (1993)). "On one hand, the presence of the firearm cannot be 'the result of accident or coincidence.'" *Id.* (quoting *United States v. Mitchell*, 104 F.3d 649, 654 (4th Cir. 1997)). "On the other hand, it is enough for § 924(c)(1) purposes if the firearm was present for protection or to embolden the actor." *Id.*

In *Lipford*, which examined the scope of 18 U.S.C. § 924(c)(1), the Fourth Circuit found that a firearm could be used or carried "during and in relation" to a drug trafficking crime when it was sold as part of the same transaction in which drugs were sold. *Id*. at 267. Specifically, in the course of selling drugs to a CI, the defendant asked the CI if he knew anyone who wanted to purchase a firearm, and the CI expressed interest and later purchased a firearm and crack cocaine as part of the same transaction. *Id*. at 263–64. The court reasoned that a rational jury could find that a "drug transaction was facilitated by the firearm transaction" because "[i]n order to persuade a drug source into taking [the] risk of selling drugs," "a drug purchaser can often 'sweeten the pot,' offering to purchase not only drugs, but other illegal goods as well," such as a firearm. *Id*. at 267. Other courts have found that a firearm was used or carried "during and in relation" to a drug trafficking crime under circumstances substantially similar to the present case: where a defendant engaging in the sale of firearms added drugs to the deal, such that the firearms transaction was instrumental in causing the drug deal to occur. *See, e.g., United States v. Bailey*, 882 F.3d 716, 722 (7th Cir. 2018) (concluding that a gun purchase facilitated a drug purchase where an undercover agent agreed to the defendant's offer to sell marijuana along with the gun "as a means of establishing credibility" with the defendant, and where the agent "would not have purchased the marijuana but for his desire to purchase the gun from" the defendant); *United States v. Ramirez-Frechel*, 23 F.4th 69, 72, 75 (1st Cir. 2022) (same).

Likewise, after Williams engaged in a firearms sale to the CI, he then offered to sell drugs at or prior to the second firearms transaction, the CI agreed, and on January 27, 2023, Williams sold both firearms and drugs to the CI in the same transaction. Consistent with the case law, a reasonable jury could find that the firearms facilitated the drug transaction, and thus were carried during and in relation to that transaction when brought to the sale, because in the absence of the

9

agreement to purchase the firearms, Williams would not have had the opportunity to sell the drugs to the CI. The Court therefore concludes that the Government presented sufficient evidence to support the conviction on Count 6 and will deny the Motion as to that count.

## IV.    Count 12

In Count 12, Williams was convicted of carrying a machinegun during and in relation to, or possessing a machinegun in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (B)(ii). Under the relevant statute, "any person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is guilty of this offense. 18 U.S.C. § 924(c)(1)(A). As relevant here, the statute further provides that "[i]f the firearm possessed by a person convicted of a violation of this subsection . . . is a machinegun," there is an enhanced penalty. 18 U.S.C. § 924(c)(1)(B)(ii). Count 12 specifically charges that the "firearm" carried on the relevant date of February 3, 2023 consisted of "two Glock-type conversion devices, qualifying as machineguns." Indictment at 13, ECF No. 39. Thus, the elements of this offense are: (1) the defendant committed a drug trafficking crime for which he might be prosecuted in a court of the United States, specifically, the crime charged in Count 11 of the Indictment; (2) the defendant knowingly carried a firearm during and in relation to the commission of that crime, or possessed a firearm in furtherance of that crime; and (3) the firearm was a machinegun. *See* 18 U.S.C. § 924(c)(1)(A), (B)(ii); *Cook*, 76 F.3d at 603; *United States v. O'Brien*, 560 U.S. 218, 235 (2010).

In seeking judgment of acquittal on Count 12, Williams advances two arguments. First, as with Count 6, he asserts that the Government cannot prove the second element because the evidence showed only that the sale of the Glock-type conversion devices occurred in the same

transaction as the sale of the fentanyl pills, and that those facts are insufficient to demonstrate that the firearms were carried during and in relation to, or possessed in furtherance of, the drug trafficking offense. Where the evidence established that Williams proposed the sale of the fentanyl pills to the CI along with the conversion devices sold on February 3, 2023, the Court finds that the sale of the conversion devices could be deemed to have facilitated the drug transaction for the same reasons discussed above in relation to Count 6. *See supra* part III.

Second, Williams argues that he is entitled to judgment of acquittal because the objects identified in Count 12 as the firearms or machineguns at issue, specifically the "two Glock-type conversion devices," Indictment at 13, do not meet the relevant definitions of "firearm" or "machinegun." Mot. at 4, 6–7, ECF No. 143. The Government responds that the relevant definition "clearly encompasses the Glock switches at issue in this case, and defines a firearm to include a machinegun." Opp'n at 4, ECF No. 148.

As discussed above, the Court has already concluded that the Glock-type conversion devices at issue in Count 12 meet the definition of a "machinegun" as set forth in 26 U.S.C. § 5845(b), and that, pursuant to 18 U.S.C. § 921(a)(24), that same definition applies to the use of the term "machinegun" as used in the "Firearms" chapter of Title 18, which includes 18 U.S.C. § 924(c). *See supra* part II.

That conclusion, however, does not end the inquiry because, unlike the offense underlying Counts 4 and 9 that prohibits the unlawful possession of a "machinegun," *see* 18 U.S.C. § 922(o), the offense underlying Count 12 bars the use, carrying, or possession of a "firearm," during and in relation to, or in furtherance of, a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A). "When interpreting a statute, we begin with the plain language." *Hately v. Watts*, 917 F.3d 770, 784 (4th Cir. 2019) (quoting *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013)). Here, the

plain language of 18 U.S.C. § 924(c) establishes that "[w]hether a *firearm* was used, carried, or possessed is" "an element of the offense." *O'Brien*, 560 U.S. at 221 (emphasis added). In *O'Brien*, the Supreme Court identified the use, carrying, or possession of a "firearm" as an element of the offense set forth in 18 U.S.C. § 924(c)(1) even when, as here, the Government also seeks the enhancement under 18 U.S.C. § 924(c)(1)(B)(ii) for when "the firearm was a machinegun." *See id.*

Significantly, the term "firearm" as used in 18 U.S.C. § 924(c) "is defined in § 921(a)(3)." *United States v. McNeal*, 818 F.3d 141, 148–49 (4th Cir. 2016). In turn, that provision defines the term "firearm" as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). A Glock-type conversion device plainly does not meet any of the first three parts of this definition. Indeed, the Supreme Court has recently defined the term "weapon" as used in this definition to refer to "an instrument of offensive or defensive combat . . . [such] as a club, sword, gun, or grenade." *Bondi v. VanDerStok*, ___ U.S. ___, No. 23-852, 2025 WL 906503, at *6 (U.S. Mar. 26, 2025) (quoting Webster's Third New Int'l Dictionary 2589 (def. 1) (1966)). A machinegun conversion device does not constitute a weapon as so defined. *See id.; see also United States v. Alsenat*, 734 F. Supp. 3d 1295, 1308 (S.D. Fla. 2024) (in considering an argument that possession of a machinegun conversion device is protected by the Second Amendment to the United States Constitution, holding that such devices do not constitute weapons in and of themselves and thus are not "Arms" within the meaning of the Second Amendment); *United States v. Johnson*, No. CR 24-20083, 2024 WL 4612888, at *12 (E.D. Mich. Oct. 29, 2024) (same).

Moreover, the Supreme Court has recently emphasized that for a weapon to qualify as a "firearm," it must "be able to expel a projectile by the action of an explosive, designed to do so, or susceptible of ready conversion to operate that way." *Bondi*, 2025 WL 906503, at *5. There is no evidence that the Glock-type conversion devices could potentially generate an explosion that would expel a projectile. These devices also do not meet any part of the relevant definition of "destructive device," which is primarily defined as "any explosive, incendiary or poison gas . . . (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses." 18 U.S.C. § 921(a)(4).

Notably, the definition of "firearm" does not include the term "machinegun" and does not incorporate the definition of that term set forth in 26 U.S.C. § 5845(b). Although the Government has correctly noted that the definition of "firearm" in 26 U.S.C. § 5845(a) includes the term "machinegun" as defined in 26 U.S.C. § 5845(b), there is nothing in 18 U.S.C. § 924(c)(1), or in the applicable definition of "firearm" in 18 U.S.C. § 921(a)(3), that could be construed as incorporating that Title 26 definition of a firearm. Had Congress intended to do so, it demonstrated that it knew how, as it expressly incorporated the definition of "machinegun" in 26 U.S.C. § 5845(b) into the definition of the same term in 18 U.S.C. § 921(a)(24). *See United States v. Helton*, 944 F.3d 198, 205 (4th Cir. 2019) (noting that where Congress incorporated one statutory definition into one subsection but not another, to interpret the latter subsection as limited to the unincorporated definition would "effectively rewrite" the statute contrary to congressional intent). Thus, while the Glock-type conversion devices, which can be used to convert a pistol into a machinegun, meet the definition of a machinegun under both 18 U.S.C. § 921(a)(24) and 26 U.S.C.

§ 5845(b), *see supra* part II, they do not meet the definition of "firearm" in 18 U.S.C. § 921(a)(3) as required to support a conviction under 18 U.S.C. § 924(c)(1)(A).

The Government's citation at the hearing on the original Rule 29 motion to *United States v. Hunter*, 843 F. Supp. 235 (E.D. Mich. 1994) ("*Hunter I*"), does not alter this conclusion. In *Hunter I*, the court found that "machinegun conversion kits" were firearms for purposes of Title 18 based on the following analysis of the relationship between the Title 18 definition of "firearm" in 18 U.S.C. § 921(a)(3), the Title 18 definition of "machinegun" in 18 U.S.C. § 921(a)(23) (now § 921(a)(24)), and the definition of "machinegun" in 26 U.S.C. § 5845(b):

> From these statutes, the Court concludes that § 921(a)(3) (definition of firearm) incorporates § 921(a)(23) (definition of machinegun) which, in turn, incorporates § 5845(b) (definition of machinegun in [the National Firearms Act], which includes conversion kits). The Court does not see how else one could read these provisions. If Defendants believe that conversion kits are not in and of themselves "'weapons" under § 921(a)(3), they forget that that section clearly envisions machineguns as weapons. And, § 921 further defines "machinegun" with reference to § 5845(b), which includes conversion kits. Therefore, reading the statutes together it is indisputable that conversion kits are machineguns under Title 18.

*Hunter I*, 843 F. Supp. at 256. Beyond the fact that *Hunter I* did not address a charge under 18 U.S.C. § 924(c), the court's analysis did not explain how it reached the conclusion that the definition of "firearm" in 18 U.S.C. § 921(a)(3) incorporated the definition of machinegun in 18 U.S.C. § 921(a)(23), which is now found at 18 U.S.C. § 921(a)(24). *See id.* This Court finds no support for that conclusion in the text of § 921(a)(3) and therefore declines to follow *Hunter I*.

Notably, later in that case, the court received but did not follow guidance from the ATF Chief Counsel that it was the ATF's position that machinegun conversion kits were machineguns under 26 U.S.C. § 5845(b) but not firearms under 18 U.S.C. § 921(a)(3). *See United States v. Hunter*, 863 F. Supp. 462, 480–81 (E.D. Mich. 1994) ("*Hunter II*") (denying a motion for reconsideration of the ruling in *Hunter I*). The ATF's analysis was that machine conversion kits

"are not among the items defined as firearms by section 921(a)(3)" and "are not subject to regulation as firearms under [Title 18]," but they are "within the definition of a 'machinegun' for purposes of [Title 18] and are therefore subject to all [Title 18] controls imposed upon 'machineguns,'" including 18 U.S.C. § 922(o). *See id.* at 480 (quoting the memorandum of the ATF Chief Counsel). This analysis is substantially consistent with the Court's conclusions relating to the Glock-type conversion devices at issue in the present case.

Thus, while the category of machineguns includes many devices that also qualify as firearms, some devices that meet the definition of a machinegun, such as machinegun conversion devices, do not qualify as firearms. This statutory distinction, which is mandated by the plain language of the relevant statutory provisions, is a logical one as applied to § 924(c). Where 18 U.S.C. § 924(c) imposes significant, mandatory minimum penalties for using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime, its rationale is undoubtedly premised on the significant risk of violence and harm to individuals that arises when a weapon that can cause serious bodily harm is present during the commission of such crimes. *See, e.g., Smith v. United States*, 508 U.S. 223, 240 (1993) (in holding that trading a firearm for drugs constitutes the "use" of a firearm during and in relation to a drug trafficking crime in violation of § 924(c), reasoning that "[t]he fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of its destructive capacity," and that "it creates a grave possibility of violence and death in either capacity"). The further enhanced penalty that applies when the firearm also qualifies as a machinegun is justifiable because this risk is heightened in light of the greater danger posed by such a firearm. *See O'Brien*, 560 U.S. at 229 (observing that "finding that a defendant carried a machinegun under § 924, in contrast to some less dangerous firearm, vaults a defendant's mandatory minimum sentence from 5 to 30 years . . . a drastic, sixfold increase"). However, the

presence at the scene of such a crime of a machinegun conversion device, which meets the statutory definition of machinegun for other purposes, does not pose the same risk because it does not constitute a firearm that can be readily used to commit acts of violence during such a crime. Congress therefore appropriately limited the reach of § 924(c)(1), and in particular the 30-year enhancement relating to a machinegun, to instances in which the "machinegun" at issue is actually also a firearm.

Accordingly, where the use, carrying, or possession of a "firearm" is an element of the offense charged in Count 12, the Glock-type conversion devices identified in Count 12 of the Indictment fail to meet the definition of a "firearm" in 18 U.S.C. § 921(a)(3), and Count 12 identified no other "firearms" that were the subject of that charge, the Court must conclude that judgment of acquittal is required as to Count 12 and will grant the Motion as to that count. The Court therefore need not and will not address Williams's remaining arguments as to Count 12.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Judgment of Acquittal, ECF No. 143, will be GRANTED IN PART and DENIED IN PART in that the Motion will be granted as to Count 12 and denied as to Counts 1, 4, 6, 8, and 9. A separate Order shall issue.

Date: April 9, 2025

THEODORE D. CHUANG
United States District Judge

16